IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEANGELO COPELAND,<br><br>Defendant. | CRIMINAL ACTION FILE<br><br>NO. 1:19-CR-9-MHC-RGV |

## ORDER

This action comes before the Court on the Final Report and Recommendation ("R&R") of Magistrate Judge Russell G. Vineyard [Doc. 44] recommending that Defendant Deangelo Copeland ("Copeland")'s Motion to Suppress Statements [Doc. 22], Motion to Suppress Evidence Seized From Car [Doc. 24], and Motion for Permission to File Out of Time Motion [Doc. 37] be denied. The Order for Service of the R&R [Doc. 45] provided notice that, in accordance with 28 U.S.C. § 636(b)(1) (2012), the parties were authorized to file objections within fourteen days of the receipt of that Order. Within the required time period, Copeland filed objections to the R&R ("Def.'s Objs.") [Doc. 56].

## I. LEGAL STANDARD

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]," 28 U.S.C. § 636(b)(1)(C), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59(a). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which the parties object and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## II. DISCUSSION

Copeland objects to the Magistrate Judge's recommendations that his Motion to Suppress Statements and his Motion for Permission to File Out of Time Motion be denied.[1] Def.'s Objs. at 4-9. The Court reviews these objections *seriatim*.

### A. The Magistrate Judge Did Not Err in Concluding that Copeland's Statements to Law Enforcement or His Waiver of Miranda[2] Rights Were Voluntary

As to the voluntariness of Copeland's statements and Miranda waiver, Copeland challenges the Magistrate Judge's conclusion that "an inference [could] be made that no threats or promises were made" during the five to seven-minute time gap after Task Force Officer Jay Criger ("Criger") walked away and left him with two other agents. Def.'s Objs. at 4. Copeland argues that the Magistrate Judge's conclusion was incorrect because the Magistrate Judge improperly relied

---

[1] Copeland also objects to the Magistrate Judge's recommendation to deny his Motion to Suppress Evidence Seized From Car [Doc. 24], but he concedes the futility of this objection in light of controlling case law regarding inventory searches and the automobile exception to the warrant requirement. Def.'s Objs. at 5-6; see also R&R at 7 n.8. Accordingly, this Court agrees with the Magistrate Judge's conclusion that evidence found in the search of Copeland's car upon his arrest need not be suppressed, and Copeland's objection to this is **OVERRULED**.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

3

on United States v. Orozco-Cuellar, No. CR407-037, 2007 WL 2904165, at *3 (S.D. Ga. Oct. 2, 2007). Id. Copeland argues that the factual scenario of Orozco-Cuellar is distinguishable because Criger implicitly accused Copeland of lying just before walking away and leaving him with two other agents for five to seven minutes. Id. at 4-5. He argues that, accordingly, "[i]t is natural to assume that a conversation regarding Mr. Copeland's truthfulness would have followed." Id. at 5. This Court agrees with the Magistrate Judge's conclusion that Copeland's argument here calls for the Court to speculate as to what happened between him and the agents during this time gap.

Criger testified under oath during an evidentiary hearing before the Magistrate Judge that Copeland was arrested three to five minutes following his sale of heroin to an undercover agent for $600.00. Tr. of Evidentiary Proceedings (Oct. 8, 2019) ("Tr.") [Doc. 40] at 5-6, 15. Upon his arrest, Copeland had the $600.00 on his person. Id. at 15. Criger had two other plain-clothes officers assisting him, and Criger presented Copeland with an Advice of Rights form, which listed the Miranda rights. Id. at 19-21. As the Magistrate Judge summarized, "[w]hen [Criger] asked Copeland whether he understood his rights, Copeland responded that he did, (Tr. at 22), and when he asked whether Copeland was willing to answer questions, Copeland said that he was, (Tr. at 22, 48-49).

4

Both Copeland and [Criger] signed the Advice of Rights form." R&R at 5. Criger then asked Copeland about the money in his pocket, and Copeland said he won it in a bet with his friend. Tr. at 27. In response, Criger "reiterated to him that it was a very serious offense that he was being arrested for," re-read the indictment, and then walked away. Id. at 28. Criger did not believe Copeland that the $600.00 had come from a bet because law enforcement had "just purchased, using $600 of [their] own money to purchase" the drugs, which they confirmed by comparing the money to their "money list." Id. While Criger was away from Copeland, Copeland remained with the two other plain clothes officers. Id. at 28-29. Criger could see Copeland even during the period where he was not with Copeland, and, during the whole interview, Criger did not see anyone yell at, show a firearm to, or make promises to Copeland. Id. at 29-30.

This Court does not find any basis in the record for an inference that, even if Criger "implicitly accused [him] of lying," Copeland was threatened in the five to seven minute time gap he spent with the plain clothes officers. As the Magistrate Judge noted, the record reflects that Copeland did not contest the content of the Advice of Rights form or that he signed such a form. R&R at 11. Copeland did not invoke his Miranda rights at any time during the interview, Criger was able to see Copeland even when he stepped away, and no one yelled or brandished

5

weapons at Copeland during the interview. Tr. at 27-29. Thus, any inference that Criger threatened Copeland would be based on speculation, and the court's refusal to accept such speculation in Orozco-Cuellar, even in light of Criger's alleged "implicit accusation," is still applicable here. See Orozco-Cuellar, 2007 WL 2904165, at *3; see also United States v. Prudente, No. 1:05-CR-324-CAP, 2006 WL 8440223, at *15-16 (N.D. Ga. July 19, 2006) (holding that, where the defendant challenged the voluntariness of his waiver based on claims that the detective "could have said anything in Spanish to Defendant in the way of threats or promises," such speculation was "insufficient to support a finding of involuntariness" when another detective on the scene did not see or hear anything to that effect, the defendant signed the waiver itself, and the record as a whole "support[ed] a finding that Defendant's waiver was knowing and intelligent); United States v. Young, No. 1:07-CR-0114-BBM, 2008 WL 11383978, at *3 (N.D. Ga. July 1, 2008) (refusing to speculate that the defendant did not understand his rights where the Miranda rights were read in English and translated into Spanish for the defendant and where "all available evidence indicate[d] that [the defendant] understood [the officer's] translation, and only speculation suggesting a dialectal variation suggest[ed] otherwise," and concluding that the "court cannot engage in such conjecture").

6

Copeland has not provided any additional evidence or other authority to support the inference that he was threatened outside of Criger's presence such that his Miranda waiver was no longer voluntary. Thus, Copeland's objection to the Magistrate Judge's reliance on Orozco-Cuellar is **OVERRULED**.[3]

### B. The Magistrate Judge Did Not Err in Concluding that Copeland's Motion for Permission to File Out of Time Motion Should Be Denied

Copeland objects to the Magistrate Judge's recommendation that, even if Copeland's proposed motion to dismiss the enhanced penalty provision in his indictment had been timely filed, it should be denied on its merits.[4] Def.'s Objs. at 6-9. Copeland contends that the Magistrate Judge improperly relied on United States v. Atkinson, No. 2:18-cr-47, 2019 WL 1398006, at *4 (S.D. Ga. Mar. 27,

---

[3] The Court notes that Copeland does not make any objection to any other part of the Magistrate Judge's analysis of voluntariness, or to the balancing of the totality of the circumstances. See R&R at 15-16. The Court has reviewed these findings and corresponding conclusions for plain error and finds none.

[4] Defendant avoids objecting to the Magistrate Judge's timeliness conclusion, arguing that, by addressing the merits of the proposed Motion to Dismiss Enhanced Penalty of Count One of the Indictment for Failure to State an Offense [Doc. 37-2], the Magistrate Judge rendered the timeliness question moot. Def.'s Objs. at 4. This Court disagrees; the Magistrate Judge addressed the merits question assuming this Court disagreed with the timeliness question. The Court has reviewed the timeliness finding and conclusion for plain error and finds none. Nevertheless, the Court will review the Magistrate Judge's alternative conclusion on the merits.

2019), adopted by 2019 WL 1757116, at *2 (S.D. Ga. Apr. 19, 2019), for the proposition that an indictment charging a violation of 21 U.S.C. § 841(b)(1)(C) sufficiently alleges the enhanced penalty provision of the statute if it alleges that "death resulted from" the use of the distributed controlled substance. Id. at 8. Copeland argues that, even though his indictment tracked this language, it was different from the indictment in Atkinson because, here, the death resulted from more than one substance. Id. He also argues that Atkinson is an unpublished district court decision and is not controlling. Id.

Copeland's attempt to distinguish Atkinson is misplaced. The Court agrees that the indictment in this case charges that death "resulted from" more than one substance. However, as the Magistrate Judge correctly found, Atkinson, interpreting Burrage v. Unites States, 571 U.S. 204 (2014), confirmed that an "indictment that charges the 'results from' statutory language (or some close variant of it) suffices to seek a § 841(b)(1)(C) penalty enhancement, and but-for causation need not be expressly alleged." R&R at 32-33; Atkinson, 2019 WL 1398006, at *4. The fact that Copeland's indictment includes more than one substance as a potential cause of the death does not affect this conclusion, as it relates only to the indictment. Just as in Atkinson, jury instructions are not at issue at this stage in the litigation, and the indictment need only track the language of the

statute to properly charge a defendant. See R&R at 32 (quoting United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) ("[A]n 'indictment is sufficient if it charges in the language of the statute.'")). Moreover, this Court need not disregard the decision of another district court in the Eleventh Circuit just because it is unpublished; district court decisions, published or not, can be persuasive authority. See, e.g., Auto-Owners Ins. Co. v. Wier-Wright Enters., Inc., No. 5:15-cv-1118-CLS, 2017 WL 1019535, at *15 (N.D. Ala. Mar. 16, 2017). Nevertheless, the Magistrate Judge properly addressed Burrage, finding it inapplicable because it did not address the sufficiency of an indictment. R&R at 31. Thus, this Court finds no error in the Magistrate Judge's reliance on Atkinson and Copeland's objection is **OVERRULED**.

### III. CONCLUSION

Accordingly, after a *de novo* review of those portions of the R&R to which Copeland objects, the Court **OVERRULES** his objections [Doc. 56]. Finding no plain error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 44] as the Opinion and Order of the Court.

It is hereby **ORDERED** that:

(1) Defendant's Motion to Suppress Statements [Doc. 22] is **DENIED**;

(2) Defendant's Motion to Suppress Evidence Seized From Car [Doc. 24] is **DENIED**; and

(3) Defendant's Motion for Permission to File Out of Time Motion [Doc. 37] is **DENIED**.

It is further **ORDERED** that the time between the date the Magistrate Judge certified Defendant ready for trail on January 27, 2020, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for good cause, and the interests of justice in considering Defendant's objections to the R&R outweigh the rights of the public and Defendant to a speedy trial, pursuant to 18 U.S.C. § 3161, *et seq.*

**IT IS SO ORDERED** this 9th day of March, 2020.

_____
MARK H. COHEN
United States District Judge